**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**ANITA J. SHELTON,**
**IMMOGENE WILLIAMS DANIELS**,

           Plaintiffs,

**v.**

                                **CIVIL ACTION NO.: 3:17-CV-108**
                                **(GROH)**

**ROBERT BLANE CROOKSHANK et al**,

           Defendants.

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

Pending before the Court is Anita J. Shelton and Immogene Williams Daniels' (together "Plaintiffs") *pro se* Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis.[1] Because Plaintiffs seek to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiffs' amended *pro se* Complaint[2] [ECF No. 10; ECF No. 10-1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B). Because the undersigned concludes that (1) this Court lacks subject-matter or personal jurisdiction, (2) various Defendants are improperly named, (3) various Defendants are entitled to judicial, prosecutorial, or qualified immunity, (4) Plaintiffs fail to state a claim upon which relief can be granted, and (5) Plaintiffs' remaining claims are either time barred by the applicable statute of limitations or indisputably meritless, the undersigned recommends that Plaintiffs' Complaint be

---

[1] This motion was referred to the undersigned by order dated September 25, 2017. Order of Referral, ECF No. 6.

[2] Unless otherwise stated herein, the undersigned's use of "the Complaint" will refer to the Amended Complaint (ECF No. 10 and ECF No. 10-1), which was filed at the Court's direction.

dismissed with and without prejudice and that Plaintiffs' motion to proceed *in forma pauperis* be denied as moot.

## II.    FACTS & PROCEDURAL HISTORY

### A.  The Underlying Dispute & Related Litigation

Although Plaintiffs' Complaint is far from clear, Plaintiffs' Complaint seems to stem from an allegedly abusive relationship with and subsequent divorce from Defendant Robert Blane Crookshank. Because Plaintiffs do not set forth a statement of facts or procedural history, the undersigned incorporates the following statement of facts set forth by the Supreme Court of Appeals of West Virginia in Shelton v. Crookshank, No. 14–1146, 2015 WL 7628839 (W. Va. Nov. 23, 2015):

> The parties were married in June of 1999, and there were no children born as a result of the marriage. In August of 2011, the parties separated. Thereafter, in 2014, [Shelton] initiated divorce proceedings, but refused to admit that irreconcilable differences existed and refused to agree to a divorce on the ground that the parties lived separate and apart for more than one year.
>
> In June of 2014, the family court held a final hearing in the divorce proceedings. Ultimately, the family court found that the parties lived separate and apart without any cohabitation and without interruption for over one year and granted the divorce on this ground, while noting [Shelton]'s objection. The family court then heard testimony concerning equitable distribution of the marital assets and ruled on that matter. The family court's "Final Divorce Order" was then entered on July 22, 2014.

Shelton, 2015 WL 7628839, at *1. Plaintiff then appealed to the circuit court and, later, the Supreme Court of Appeals. Id.

### B.  The Complaint

Plaintiffs filed the instant *pro se* complaint asserting a plethora of claims against no less than forty plus defendants: Robert Blane Crookshank, Pamela Games Neely,

2

Heather Deeds, various troopers of the West Virginia State Police, various members of the Berkeley County Sheriff's Department, Kris Wiebold, Janie Wiebold, Robert C. Stone, the receptionist at the Maryland Office of the Attorney General, the receptionist at the Maryland Department of Public Safety and Correctional Services, Joseph Brody Cordell, Rita Courman, Family Court Judge Sally G. Jackson, Circuit Judge Michael D. Lorensen, the nurses and director of the Hospice of the Panhandle, members of K-Mart security, members of Wal-Mart security, the United States Attorney General, the United States Department of Justice, the Federal Bureau of Investigation, the United States Department of Homeland Security, the 2015-2016 Term Justices of the Supreme Court of Appeals of West Virginia, the West Virginia Circuit Courts, the West Virginia Lawyer Disciplinary Board, the Attorney Grievance Commission of Maryland, the West Virginia State Police Professional Standards Officer, the Office of the Governor (State of West Virginia), the Judicial Investigation Commission of West Virginia, the West Virginia RN Board, the Maryland Department of Human Resources, James Michael Rickard, Anthony Morgan, Brian Mulligan, Teresa Mulligan, and persons known only by one name or totally unknown to Plaintiffs.

There, Plaintiffs assert nine ostensibly related claims: (1) conspiracy/corruption/fraud, (2) retaliation, (3) illegal profiting, (4) gang stalking/harassment/mental abuse/physical attacks/felony vandalism/internet-hacking, (5) felony vandalism/home invasion, (6) discrimination and HIPPA and privacy law violations, (7) mail fraud/threats by mail, (8) violation her Second Amendment rights, and (9) wrongful death/possible murder of Plaintiff Daniels.[3] Plaintiffs insist that

---

[3] Although Plaintiffs listed ten claims in their Complaint, the tenth claim was not a separate claim but, rather, an assertion that Plaintiff's nine claims are related and ongoing. ECF No. 10-1 at 9.

Defendants have caused them seven distinct injuries: (1) Plaintiff Daniels (Plaintiff

Shelton's mother) passed away on May 26, 2014; (2) Plaintiff Shelton lost her home and

had to move six times; (3) Plaintiff Shelton lost personal relationships, with family and

neighbors, that cannot be recovered; (4) Plaintiffs were slandered and libeled; (5)

Plaintiff Shelton "suffered/suffers monetarily, spiritually, emotionally,mentally [sic] and

physically, from intentional affliction"; (6) "[e]xtreme stress and damages have trickled

down to [Plaintiff Shelton's] sister, Shirley[,] and[ her] daughter, Rachel"; and (7) Plaintiff

Shelton is wrongfully labeled mentally ill because of a falsified report from a police

officer. ECF No. 10 at 9.

    Accordingly, Plaintiffs request seven forms of relief: (1) a federal investigation

into their claims; (2) a program where domestic violence cases that involve local law

enforcement officers are handled by disinterested parties in neighboring jurisdictions;

(3) training on how to legally and ethically handle cases that involve work associates;

(4) "[m]ake it a [f]elony for filing [m]alicious [m]ental [applications]"; (5) a "[w]ritten

apology from all defendants"; (6) "[s]ecurity for Plaintiff [Shelton] and family for [l]ife";

and (7) a "[m]onetary award at the highest allowed by law from each defendant for

compensatory and punitive damages, I [sic] loss of life, pain, mental and physical

suffering to include an [sic] the highest amount allowed by law, from each defendant or

100 million [c]ollectively." Id.

    The undersigned addresses these arguments below.

### III.   <u>DISCUSSION</u>

**A.  Legal Standard**

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs." L.R. Gen. P. 3.01. The plaintiff files this affidavit along with her request or Motion for Leave to Proceed *In Forma Pauperis*. <u>See</u> Fed. R. Civ. P. 24. The Supreme Court of the United States has explained that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. <u>See</u> 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. <u>See</u> <u>Michau v. Charleston Cty., S.C.</u>, 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2)(B). A case is often dismissed *sua sponte* (i.e., on the court's own decision) before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." <u>Neitzke</u>, 490 U.S. at 324. When reviewing *pro se* complaints, the Court must construe them liberally. <u>See</u> <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).

As stated above, under the federal *in forma pauperis* statute, the court may dismiss a case if the complaint is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). A complaint is frivolous if it is without "an arguable basis either in law or fact." Neitzke, 490 U.S. at 325. A complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. See id. at 328. Cases should only be dismissed as frivolous when the legal theories are "indisputably meritless," or where the claims rely on factual allegations which are "clearly baseless." Id. at 327; see also Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims where the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The federal *in forma pauperis* statute allows a court to *sua sponte* dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass

v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v.

Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d

279, 281 (4th Cir. 2002). A "claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus,

a well-pleaded complaint must offer more than "a sheer possibility that a defendant has

acted unlawfully" in order to meet the plausibility standard and survive dismissal for

failure to state a claim. Id.; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.

2009).

### B.  Plaintiff Immogene Williams Daniels

As a threshold matter, Plaintiff Immogene Williams Daniels—who passed away

on May 26, 2014—cannot bring the instant cause of action.

Significantly, "a party must have a legal existence as a prerequisite to having the

capacity to sue or be sued." Adelsberger v. United States, 58 Fed. Cl. 616, 618 (2003)

(citations omitted); Roby v. Corp. of Loayd's, 796 F. Supp. 103, 110 (S.D.N.Y. June 12,

1992) ("Both capacity to be sued and legal existence are prerequisites to the suability of

an entity . . . ."). Although "capacity to sue" refers to a "party's right to litigate," our

concern is, rather, the "distinct but closely related concept: legal existence." Garlock

Sealing Tech., LLC v. Pittman, No. 2008-IA-01572-SCT, 2010 WL 4009151, at *5 (Miss.

Oct. 14, 2010) (citations omitted). "Legal existence means, at a minimum, that the

individual suing is alive." Id.

Here, it is clear from the Complaint that Ms. Daniels died before the Complaint

was filed. Indeed, the very first page of the Complaint acknowledges that Ms. Daniels is

7

"deceased." ECF No. 10 at 1. "A person who dies prior to filing suit is not a legal entity." Adelsberger, 58 Fed. Cl. at 618 (citing Mizukami v. Buras, 419 F.2d 1319 (5th Cir. 1969) (defendant's death extinguishes claim); Banakus v. United Aircraft Corp., 290 F. Supp. 259 (S.D.N.Y. 1968) (suit is a nullity where plaintiff, unbeknownst to counsel, died prior to filing of suit); Moul v. Pace, 261 F. Supp. 616 (D. Md. 1966) (wrongful death suit brought after defendant died dismissed); Chorney v. Callahan, 135 F. Supp. 35 (D. Mass.1955) (purported action a nullity because a dead man cannot be named defendant in an action); Pasos v. Eastern S.S. Co., 9 F.R.D. 279 (D. Del. 1949) (person who dies prior to filing suit is not a legal entity)). Because Ms. Daniels died before the Complaint was filed, she did not (and does not) have legal existence, let alone the capacity to sue or be sued. See Adelsberger, 58 Fed. Cl. at 618. So it logically follows, then, that the instant cause of action, at least as it relates to Ms. Daniels, is a nullity ab initio. In re Asbestos Products Liability Litigation (No. VI), 2016 A.M.C. 219, 224 (E.D. Pa. Nov. 9, 2015). Because Ms. Daniel's case has no legal affect, the undersigned need not address the validity of her claims below.[4]

### C. Lack of Subject-Matter Jurisdiction

If a "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (stating that "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court"). Subject-matter

---

[4] Two separate but related points: First, because Ms. Daniels cannot bring this cause of action, the undersigned's use of the word "Plaintiff" throughout the remainder of this report and recommendation will refer to Plaintiff Anita J. Shelton—not Ms. Daniels. Second, to the extent Plaintiff has alleged the wrongful death of Ms. Daniels, the undersigned addresses that claim, separately, below. See Section III.H.

jurisdiction in federal courts must be based on diversity jurisdiction or federal-question jurisdiction. 28 U.S.C. §§ 1331, 1332. Diversity jurisdiction has two requirements: First, there must be complete diversity of citizenship, meaning that each plaintiff is a citizen of a different state than each defendant. 28 U.S.C. § 1332. Second, the amount in controversy must exceed $75,000.00. Id. By contrast, federal-question jurisdiction only requires that the action "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Pursuant to the well-pleaded complaint rule, "a federal question must appear on the face of [the] plaintiff's . . . complaint." Sharp v. AT & T Commc'ns, 660 F. Supp. 650, 650 (N.D. W. Va. 1987).

Here, Plaintiff's Complaint alleges that Kris and Janie Wiebold made false statements to the West Virginia State Police regarding Plaintiff's mental health and slandered her. ECF No. 10 at 2; ECF No. 10-1 at 6. Although Plaintiff is not sure whether Kris and Janie Wiebold live in West Virginia, a cursory review of www.whitepages.com reveals that the Wiebolds live at the West Virginia address listed in Plaintiff's Complaint. Id. Because Plaintiff and the Wiebolds both live in West Virginia, there is no complete diversity among the parties as required by § 1332. ECF No. 10 at 1, 2. Accordingly, the Court does not have diversity jurisdiction over Plaintiff's claims against the Wiebolds. See 28 U.S.C. § 1332. In addition, a federal question does not appear from the face of the complaint. See Sharp, 660 F. Supp. at 650. Accordingly, Plaintiff's allegations against the Wiebolds must be dismissed, without prejudice, for lack of subject-matter jurisdiction.[5] See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir.

---

[5] Even if this Court did have subject-matter jurisdiction over these claims, Plaintiff's remaining claims of slander would likely be time barred by the applicable statute of limitations. See infra Section III.F.i.

2013) (holding that a dismissal for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

### D.  Lack of Personal Jurisdiction

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied." Bryan v. U.S. Dep't of Justice, No. 1:07CV101, 2007 WL 2892967, at *2 (N.D. W. Va. Sept. 28, 2007). "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W. Va. Code § 56-3-33(a). "[B]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather, the statutory inquiry necessarily merges with the Constitutional inquiry." In re Celotex Corp., 124 F.3d 619, 627–28 (4th Cir. 1997). "Therefore, to satisfy constitutional due process, the defendant must have 'sufficient minimum contacts' with West Virginia so that requiring it to defend its interest here would not 'offend traditional notions of fair play and substantial justice.'" Bryan, 2007 WL 2892967, at *2 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### i.   Maryland Defendants

Here, Plaintiff names as defendants the receptionist at the Maryland Office of the Attorney General, the receptionist at the Maryland Department of Public Safety and

Correctional Services,[6] the Attorney Grievance Commission of Maryland, the Maryland Department of Human Resources, and Brian and Teresa Mulligan. But Plaintiff "fail[] to assert any contact by them with the State of West Virginia, much less the minimum contacts necessary to satisfy the Due Process Clause." Bryan, 2007 WL 2892967, at *2. Thus, based on the information contained in the Complaint, this Court cannot exercise personal jurisdiction over these individuals because there is no evidence that these defendants have had contact with the State of West Virginia. See generally ECF Nos. 10, 10-1.

Indeed, Plaintiff's only factual allegation against the Maryland Office of the Attorney General, the receptionist at the Maryland Department of Public Safety and Correctional Services, the Attorney Grievance Commission of Maryland, and the Maryland Department of Human Resources is that Plaintiff filed a complaint by telephone. In response, both the Maryland Office of the Attorney General and the Maryland Department of Public Safety and Correctional Services informed her that her claims were not within the State of Maryland's jurisdiction. Instead, they recommended that she contact the West Virginia State Police or the Attorney General of West Virginia. ECF No. 10-1 at 1.

Likewise, Plaintiff fails to assert how Brian and Teresa Mulligan have had any contact with the State of West Virginia. Plaintiff's only allegation against the Mulligans is that they were listed as witnesses on an involuntary mental commitment application and ostensibly gave false statements in support of said application. Id. at 7. Without more,

---

[6] Although Plaintiff did not name the Maryland Department of Public Safety and Correctional Services explicitly, that is the closest state entity to the Maryland entity that Plaintiff did name: The Maryland Division of Correction. ECF No. 10-1 at 1.

this is not enough to satisfy due process and, therefore, the Court lacks personal jurisdiction over the Mulligans.

"Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." Smith v. U.S. Attorney Gen., No. 3:CV-15-1672, 2015 WL 6773854, at *2 (M.D. Pa. Nov. 5, 2015) (citing Roman v. Jeffes, 904 F.2d 192, 195 n.3 (3d Cir. 1990)). Accordingly, Plaintiff's claims against the receptionist at the Maryland Office of the Attorney General, the receptionist at the Maryland Department of Public Safety and Correctional Services, the Attorney Grievance Commission of Maryland, the Maryland Department of Human Resources, and Brian and Teresa Mulligan are dismissed, without prejudice, for lack of personal jurisdiction. See ITL Intern., Inc. v. Café Soluble, S.A., 464 Fed. App'x 241, 244 (5th Cir. 2012) (noting that a dismissal for lack of personal jurisdiction "does not 'operate[] as an adjudication on the merits' and thus should have been without prejudice" (footnotes omitted)); Arocho v. Lappin, 461 Fed. App'x 714, 719 (10th Cir. 2012) (acknowledging the well-established rule "that dismissals for lack of personal jurisdiction are without prejudice").

### ii.  United States Attorney General

Next, Plaintiff asserts a Bivens claim[7] against the United States Attorney General[8] and effectively argues that the Attorney General failed to investigate or

---

[7] A "Bivens claim" refers to a claim brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). "[A] Bivens claim can be brought only against federal officials in their individual capacities. Bivens claims cannot be asserted directly against the United States, federal officials in their official capacities, or federal agencies." Smith v. United States, 561 F.3d 1090, 1099 (10th Cir. 2009) (citations omitted).

[8] It is unclear whether the Complaint is referring to now United States Attorney General Jeff Sessions or former United States Attorney General Eric Holder, but that information is not necessary to the Court's analysis of personal jurisdiction in this case.

prosecute Plaintiff's numerous reports of physical attacks, kidnapping, corruption, internet crimes, gang stalking, mail issues, and harassment. ECF No. 10-1 at 5.

But Plaintiff fails to assert that the Attorney General had any contact with the State of West Virginia, "much less the minimum contacts necessary to satisfy the Due Process Clause." Bryan, 2007 WL 2892967, at *2. Thus, based on the information contained in the Complaint, this Court cannot—and will not—"exercise personal jurisdiction over the United States Attorney General merely because he is the head of the Department of Justice." Flores v. U.S. Attorney Gen., No. 15–1899 (JNE/JSM), 2015 WL 4208703, at *5 (D. Minn. July 10, 2015) (citing McCabe v. Basham, 450 F. Supp. 2d 916, 925 (N.D. Iowa 2006)); see also Brooks v. McCord, No. 4:13CV00352 JLH, 2013 WL 3967206, at *2 (E.D. Ark. Apr. 1, 2013) (refusing to find personal jurisdiction over United States Attorney General where complaint failed to provide "coherent factual allegations"); Gonzalez v. Sanders, No. 2:05cv00269 SWW-JWC, 2008 WL 3892082, at *4 (E.D. Ark. Aug. 19, 2008) (holding that the United States Attorney General had insufficient minimum contacts to establish personal jurisdiction "by virtue of his position alone").

Further, even if this Court had jurisdiction over the United States Attorney General, it is clear from the Complaint that Plaintiff's claims are "indisputably meritless." Neitzke, 490 U.S. at 328. The Supreme Court of the United States has long made clear that "prosecutors enjoy absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" Lyles v. Sparks, 79 F.3d 372, 376 (4th Cir.

1996) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)).[9] This includes absolute immunity for "prosecutors' decisions 'whether and when to prosecute.'" <u>Lyles</u>, 79 F.3d at 377 (quoting <u>Imbler</u>, 424 U.S. at 431 n.33). Therefore, even if the Court had jurisdiction over the Attorney General, Plaintiff's claims would fail because the Attorney general is entitled to absolute immunity.

"Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." <u>Smith</u>, 2015 WL 6773854, at *2 (citing <u>Roman</u>, 904 F.2d at 195 n.3). Accordingly, Plaintiff's claims against the United States Attorney General are dismissed without prejudice. <u>See</u> <u>ITL Intern., Inc.</u>, 464 Fed. App'x at 244 (noting that a dismissal for lack of personal jurisdiction "does not 'operate[] as an adjudication on the merits' and thus should have been without prejudice" (footnotes omitted)); <u>Arocho</u>, 461 Fed. App'x at 719 (acknowledging the well-established rule "that dismissals for lack of personal jurisdiction are without prejudice").

### iii. Rita Courman, United States Postal Service

Third, Plaintiff asserts a <u>Bivens</u> claim against Rita Courman, a manager of customer service for the United States Postal Service ("USPS"). Although Plaintiff's Complaint is far from clear, she presumably claims that Rita Courman should be held accountable for whatever mail issues Plaintiff is ostensibly experiencing. <u>See</u> ECF No. 10-1 at 2.

But again, Plaintiff fails to assert that Rita Courman has had any contact with the State of West Virginia, "much less the minimum contacts necessary to satisfy the Due

---

[9] "Although <u>Imbler</u> and several of the other immunity cases . . . were decided in the context of suits against state officers under 42 U.S.C. § 1983, their analysis extends to <u>Bivens</u>-type suits brought directly under the Constitution against federal officials." <u>Lyles</u>, 79 F.3d at 376 n.4 (citations omitted).

Process Clause." <u>Bryan</u>, 2007 WL 2892967, at *2. Indeed, by Plaintiff's own account, Ms. Courman works (or worked) for the USPS in North Carolina and lives in Virginia. Thus, based on the information contained in the Complaint, this Court cannot exercise personal jurisdiction over Ms. Courman because there is no evidence that she has had contact with the State of West Virginia.

"Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." <u>Smith</u>, 2015 WL 6773854, at *2 (citing <u>Roman</u>, 904 F.2d at 195 n.3). Accordingly, Plaintiff's claims against Rita Courman are dismissed, without prejudice, for lack of personal jurisdiction. <u>See</u> <u>ITL Intern., Inc.</u>, 464 Fed. App'x at 244 (noting that a dismissal for lack of personal jurisdiction "does not 'operate[] as an adjudication on the merits' and thus should have been without prejudice" (footnotes omitted)); <u>Arocho</u>, 461 Fed. App'x at 719 (acknowledging the well-established rule "that dismissals for lack of personal jurisdiction are without prejudice").

### E. Improper Defendant, Generally

#### i. Nurses & Director of the Hospice of the Panhandle

Plaintiff attempts to assert a <u>Bivens</u> or § 1983 claim[10] against the nurses and director of the Hospice of the Panhandle (and perhaps even the Hospice itself). ECF No. 10-1 at 3. However, the Hospice of the Panhandle—as well as its employees—are not proper defendants to a <u>Bivens</u> or § 1983 claim because they are not state actors. Here, Plaintiff has no right to pursue a <u>Bivens</u> or § 1983 claim against a private entity or employees of a privately operated entity, because a private entity and its employees are

---

[10] For a more detailed discussion of Plaintiff's § 1983 claims see <u>infra</u> Section III.G.

not acting under color of federal or state law and their actions are not fairly attributable to the federal or state government. See Manjarrez v. Bureau of Prisons, No. PE:10–CV–00016–RAJ, 2011 WL 7323653, at *2 (W.D. Tex. Aug. 5, 2011); see also Holly v. Scott, 434 F.3d 287 (4th Cir. 2006) (refusing to "extend[] Bivens liability to the individual employees of a private corporation operating a correctional facility").

To the extent Plaintiff attempts to pursue a non-Bivens or non-§ 1983 claim against Hospice and its employees, those claims must nevertheless be dismissed because Hospice and its employees are likely citizens of West Virginia. Indeed, the West Virginia Secretary of State website confirms that Hospice is a domestic, non-profit corporation. Because Hospice, its employees, and Plaintiff are citizens of the same state, this Court lacks diversity jurisdiction pursuant to § 1332. Nor does this Court have federal-question jurisdiction pursuant to § 1331, because Plaintiff's claims do not raise a question of federal law. See ECF No. 10-1 at 3. But even if this Court did have diversity jurisdiction, Plaintiff's claims against Hospice and its employees must be dismissed for failure to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Therefore, Plaintiff's Bivens or § 1983 claims against Hospice and its employees must be dismissed with prejudice. To the extent Plaintiff is pursuing a non-Bivens or non-§ 1983 claim, those claims are dismissed, without prejudice, for lack of jurisdiction or failure to state a claim. See OpenBand at Broadlands, LLC, 713 F.3d at 185 (holding that a dismissal for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

### ii.    K-Mart & Wal-Mart Security

Plaintiff's <u>Bivens</u> or § 1983 claims against K-Mart and Wal-Mart security

personnel must fail for the same reason: Plaintiff has no right to pursue a <u>Bivens</u> or §

1983 claim against a private entity or employees of a privately operated entity because

a private entity and its employees are <u>not</u> acting under color of federal or state law and

their actions are not fairly attributable to the federal or state government. <u>See</u> <u>Manjarrez</u>

<u>v. Bureau of Prisons</u>, No. PE:10–CV–00016–RAJ, 2011 WL 7323653, at *2 (W.D. Tex.

Aug. 5, 2011); <u>see also</u> <u>Holly v. Scott</u>, 434 F.3d 287 (4th Cir. 2006) (refusing to "extend[]

<u>Bivens</u> liability to the individual employees of a private corporation operating a

correctional facility"). Thus, Plaintiff's <u>Bivens</u> or § 1983 claims against K-Mart and Wal-

Mart security personnel are dismissed with prejudice. To the extent any other claims

remain, those claims must be dismissed for failure to state a claim upon which relief can

be granted. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii).

### F.  Plaintiff's Remaining <u>Bivens</u> Claims

Now, the undersigned must evaluate Plaintiff's remaining <u>Bivens</u> claims against

the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation

("FBI"), the United States Department of Homeland Security ("DHS"), Robert Blane

Crookshank, James Michael Rickard, and Anthony Morgan.

"To establish a <u>Bivens</u> claim, a plaintiff must specify the unconstitutional acts

each defendant committed to deprive plaintiff of a federal right, show the defendant's

personal involvement in denying [plaintiff] his or her federal right, and establish a causal

connection to the harm alleged." <u>Burns v. Gutierrez</u>, No. 1:07CV07, 2007 WL 2362738,

at *4 (N.D. W. Va. Aug. 15, 2007) (citing <u>Slakan v. Porter</u>, 737 F.2d 368, 373 (4th Cir.

1984)). "Claims filed pursuant to Bivens are subject to the analogous state statute of limitations." Sakwa v. Aronica, No. 92-2069, 1993 WL 165297, at *1 (4th Cir. May 18, 1993) (citing Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983), cert. denied, 464 U.S. 916 (1983)).

### i.  United States Department of Justice, Federal Bureau of Investigation, and United States Department of Homeland Security

Plaintiff asserts Bivens claims against the DOJ, FBI, and DHS. Here, however, the undersigned need not address whether Plaintiff has properly alleged a Bivens claim against the DOJ, FBI, and DHS because they are improper defendants.

This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1346(b)(1). This Court has personal jurisdiction over the DOJ, FBI, and DHS because offices of the DOJ, FBI, and DHS are located in this state and they conduct business in West Virginia. Bryan, 2007 WL 2892967, at *2 (footnote omitted) (citing Burnham v. Superior Court of California, 495 U.S. 604, 610 (1990)). "A Bivens cause of action, however, cannot be brought against a federal agency." Id. (citing FDIC v. Meyer, 510 U.S. 471, 486 (1994)). Accordingly, the DOJ, FBI, and DHS are not proper defendants and must be dismissed with prejudice. See id.[11]

### ii.  Robert Blane Crookshank

Plaintiff asserts Bivens claims against Robert Blane Crookshank, Plaintiff's ex-husband, alleging that he (1) used his position as a FEMA security officer to influence law enforcement and Judge Jackson, (2) made false statements to the West Virginia

---

[11] Plaintiff's Complaint does not re-name the Federal Communications Commission ("FCC") as a defendant. See ECF Nos. 10,10-1. Further, even if Plaintiff had re-named the FCC as a defendant, the FCC would be an improper defendant. See Section III.F.i. Accordingly, the FCC is dismissed with prejudice. Further, to the extent any other defendants are not renamed in Plaintiff's Complaint, those defendants are dismissed, without prejudice, for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

State Police that Plaintiff was mentally ill and a drug user, and (3) filed a purportedly "malicious" involuntary mental commitment application for Plaintiff. ECF No. 10 at 2. But, without more, the undersigned cannot discern how the alleged acts were unconstitutional, or how the alleged acts deprived Plaintiff of a constitutional right. Because Plaintiff has failed to properly allege her Bivens claims against Mr. Crookshank, those claims must be dismissed, without prejudice, for failure to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### iii.    James Michael Rickard

Although Plaintiff cites Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) in her Complaint, Plaintiff does not assert any discernible Bivens claim against James Michael Rickard, a federal police officer. Rather, Plaintiff alleges that Mr. Rickard (1) was ostensibly present for the 2012 attack, (2) slandered Plaintiff, (3) used his presence to sway Judge Jackson, and (4) is "possibly" using his law enforcement authority to violate the law. ECF No. 10-1 at 6. Of course, alleging that someone is "possibly" using his law enforcement authority to violate the law is not enough to state a plausible Bivens claim upon which relief can be granted. Accordingly, Plaintiff's purported Bivens claims against Mr. Rickard are dismissed, without prejudice, for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Nor do Plaintiff's remaining allegations raise a federal question that would allow this Court to exercise jurisdiction pursuant to 28 U.S.C. § 1331. Because the Court does not have federal-question jurisdiction, the undersigned must now determine whether the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Here, Plaintiff's Complaint alleges that Plaintiff is a citizen of West Virginia and Mr. Rickard is a citizen of Maryland.

ECF No. 10 at 1; ECF No. 10-1 at 6. Assuming that the amount-in-controversy requirement of § 1332 is satisfied, this Court has diversity jurisdiction because Plaintiff and Mr. Rickard are citizens of different states. Further, the undersigned concludes that this Court has personal jurisdiction over Mr. Rickard because Plaintiff's allegations (taken as true) demonstrate that Mr. Rickard has had "sufficient minimum contacts" with the State of West Virginia to satisfy due process. See Bryan, 2007 WL 2892967, at *2 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

That said, the Court must nevertheless dismiss Plaintiff's claims against Mr. Rickard because the undersigned concludes that they are either time barred by the applicable statute of limitations or are "indisputably meritless." First, Plaintiff's allegations surrounding the 2012 attack referenced throughout her Complaint are time barred. Under West Virginia law, a claim of assault and battery is subject to a two-year statute of limitations.[12] Courtney v. Courtney, 190 W. Va. 126, 130, 437 S.E.2d 436, 440 (1993). Because the alleged attack occurred in 2012, Plaintiff was required to bring those claims within two years of the date of said attack. See id. Regardless of when, in 2012, the alleged attack took place, the two-year statute of limitations has long passed. Accordingly, all of Plaintiff's claims against Mr. Rickard that stem from the 2012 attack must be dismissed with prejudice. Second, Plaintiff's claim of slander is subject to a one-year statute of limitations.[13] White v. Nat. Church Residence, No. 12–1427, 2013 WL 3184640, at *2 (W. Va. June 24, 2013) (citing W. Va. Code §§ 55-

---

[12] Because the Court's jurisdiction is based on diversity, the applicable statute of limitations is determined by West Virginia state law. Rowland v. Patterson, 852 F.2d 108, 110 (4th Cir. 1988) ("Federal courts sitting in diversity generally apply state statutes of limitations." (citing Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530 (1949))).

[13] Because the Court's jurisdiction is based on diversity, the applicable statute of limitations is determined by West Virginia state law. Rowland, 852 F.2d at 110 ("Federal courts sitting in diversity generally apply state statutes of limitations." (citing Ragan, 337 U.S. 530)).

2-12, 55-7-8a). Based on the information contained in the Complaint, all of the slanderous statements, if any, were made on or before November 23, 2015, the date the Supreme Court of Appeals issued its decision affirming the circuit court. See Shelton, 2015 WL 7628839. Indeed, all of Plaintiff's claims, including her claims of slander, seemingly stem from 2012 to 2014. See generally ECF Nos. 10, 10-1. Because the factual basis for Plaintiff's claim of slander occurred before August 31, 2016 (one year from the date Plaintiff filed her original Complaint), Plaintiff's claim is time barred by the applicable statute of limitations. See White, 2013 WL 3184640, at *2 (citing W. Va. Code §§ 55-2-12, 55-7-8a). Because these claims are time barred by the applicable statute of limitations, they are dismissed with prejudice.

Finally, to the extent Plaintiff has any remaining claims against Mr. Rickard, the undersigned concludes that those claims are "indisputably meritless." Neitzke, 490 U.S. at 328. "Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." Smith v. U.S. Attorney Gen., No. 3:CV-15-1672, 2015 WL 6773854, at *2 (M.D. Pa. Nov. 5, 2015) (citing Roman v. Jeffes, 904 F.2d 192, 195 n.3 (3d Cir. 1990)). Accordingly, Plaintiff's claims against Mr. Rickard are dismissed with and without prejudice.

### iv.   Anthony Morgan

Here, Plaintiff's Complaint alleges that Anthony Morgan, a retired corrections officer and federal employee, (1) was present for a 2012 attack on Plaintiff, (2) is "perhaps" abusing his position in law enforcement, and (3) was listed in emails that Plaintiff Shelton received in 2016. ECF No. 10-1 at 7. These allegations, however, do

not properly allege a <u>Bivens</u> claim because they do not state how Mr. Morgan's actions were unconstitutional or how they deprived Plaintiff Shelton of a constitutional right. First, there is, of course, nothing inherently unconstitutional about receiving an email where someone else's name is included. Second, the conclusory allegation that someone is "perhaps" abusing their position in law enforcement is insufficient to state a <u>Bivens</u> claim. And third, the allegation regarding the 2012 attack does not state how Mr. Morgan's presence (or participation) was related to his federal employment. <u>Bivens</u> claims only allow persons to recover damages for unconstitutional conduct "carried out by virtue of federal authority." <u>See</u> <u>Bivens</u>, 403 U.S. at 391. Accordingly, these purported <u>Bivens</u> claims must be dismissed, without prejudice, for failure to state a claim. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii).

Further, to the extent any non-<u>Bivens</u> claims remain against Mr. Morgan, the undersigned concludes that this Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332. Here, it is clear from the complaint that Plaintiff Shelton and Mr. Morgan are citizens of West Virginia. ECF No. 10 at 1; ECF No. 10-1 at 7. Because Plaintiff Shelton and Mr. Morgan both live in West Virginia, there is no complete diversity among the parties. 28 U.S.C. § 1332. Accordingly, the Court does not have diversity jurisdiction over Plaintiff's remaining claims against Mr. Morgan. <u>Id.</u> Accordingly, Plaintiff's allegations against Mr. Morgan must be dismissed, without prejudice, for lack of subject-matter jurisdiction.[14] <u>See</u> <u>OpenBand at Broadlands, LLC</u>, 713 F.3d at 185 (holding that a dismissal for lack of subject matter jurisdiction "must be one without

---

[14] Even if this Court did have subject-matter jurisdiction over these claims, any claims stemming from the 2012 attack would likely be time barred by the applicable statute of limitations. <u>See</u> <u>supra</u> Section III.F.iii.

prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

### G.  Plaintiff's § 1983 Claims

Plaintiff asserts a variety of claims pursuant to 42 U.S.C. § 1983,[15] and the undersigned addresses them, in turn, below.

#### i.    Improper Defendants

Section 1983 provides in relevant part that "[e]very <u>person</u> who, under color of any statue, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law . . . [or] suit in equity." 42 U.S.C. § 1983 (emphasis added). Therefore, to state a successful claim, pursuant to § 1983, Plaintiff "must show that the conduct complained of was committed by a <u>person</u> acting under the color of state law and that such conduct deprived [them] of a right secured by the Constitution or laws of the United States." <u>Key v. Alsop</u>, No. 3:07-CV-96, 2008 WL 4379162, at *2 (N.D. W. Va. Sept. 22, 2008) (emphasis in original) (citing <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992)).

##### a.  West Virginia Circuit Courts, West Virginia Lawyer Disciplinary Board, Office of the Governor of West Virginia, Judicial Investigation Commission of West Virginia, and West Virginia RN Board

Here, Plaintiff asserts a variety of § 1983 claims against state agencies and other related state entities. Specifically, Plaintiff names the West Virginia Circuit Courts, the West Virginia Lawyer Disciplinary Board, the Office of the Governor of West Virginia,

---

[15] Although Plaintiff does not mention § 1983 in their Complaint, Plaintiff generally brought her action pursuant to <u>Bivens v. Six Unkown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). ECF No. 10 at 1. To the extent Plaintiff brings her cause of action against state employees or private individuals, the undersigned liberally construes Plaintiff's Complaint to assert these claims pursuant § 1983.

the Judicial Investigation Commission of West Virginia, and the West Virginia RN Board as defendants. ECF No. 10-1 at 5. But the State, its agencies, and other related state entities "are not <u>persons</u> acting under state law." <u>Key</u>, 2008 WL 4379162, at *2 (emphasis added) (citing <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989)); <u>see also</u> <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 71 (1989) (holding "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Because the West Virginia Circuit Courts, the West Virginia Lawyer Disciplinary Board, the Office of the Governor of West Virginia, the Judicial Investigation Commission of West Virginia, and the West Virginia RN Board are not "persons" amenable to suit under § 1983, they are not proper parties to this suit and must be dismissed with prejudice.

### b. Robert C. Stone

Plaintiff alleges that Robert C. Stone, Esq., the attorney who represented Mr. Crookshank during his divorce from Plaintiff (1) used his position as an attorney to give false information out of court, (2) used the rules of procedure to sway Judge Jackson during Plaintiff and Mr. Crookshank's divorce, (3) gave Judge Jackson false information, (4) wrote Judge Jackson's orders, and (5) asked Judge Jackson to appoint a Guardian ad Litem to represent Plaintiff Shelton. ECF No. 10 at 4.

First, as a threshold matter, Mr. Stone is not a "state actor[] against whom an allegation of deprivation of constitutional rights under color of law could be properly lodged." <u>Catz v. Chalker</u>, 142 F.3d 279, 289 (6th Cir. 1998), <u>overruled on other grounds by Coles v. Granville</u>, 448 F.3d 853, 859 n.1 (6th Cir. 2006) (citations omitted); <u>see also Deas v. Potts</u>, 547 F.2d 800, 800 (4th Cir. 1976) (recognizing that a privately retained

24

attorney "is not acting under color of state law, and therefore is not amenable to suit under § 1983"). Indeed, Mr. Stone is an attorney who, in this instance, was privately retained by Mr. Crookshank to represent him during his divorce. ECF No. 10 at 4. Therefore, to extent Plaintiff alleges § 1983 claims against Mr. Stone, those claims must be dismissed with prejudice. See Catz, 142 F.3d at 289.

Second, none of these allegations appear to raise a cognizable cause of action. For example, attorneys are, in fact, expected to use the applicable rules of procedure to their client's benefit. In addition, it's common practice for attorneys to draft proposed orders for the court's consideration, which the Judge is free to accept, reject, or revise. Further, if there was a question regarding Plaintiff Shelton's mental health, Mr. Stone acted in her best interest by moving the family court to appoint a Guardian ad Litem to represent her. None of these allegations raise a cognizable cause of action.

Third, even if Plaintiff does assert cognizable causes of action against Mr. Stone, the undersigned concludes that this Court does not have jurisdiction to address them. Because the allegations do not raise a federal question, this Court is without federal-question jurisdiction pursuant to § 1331. And because Plaintiff and Mr. Stone are both citizens of West Virginia, this Court is without diversity jurisdiction pursuant to § 1332. Accordingly, any remaining claims against Mr. Stone must be dismissed without prejudice. See OpenBand at Broadlands, LLC, 713 F.3d at 185 (holding that a dismissal for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

### c.  Joseph Brody Cordell

Plaintiff similarly includes a host of allegations against Joseph Brody Cordell, the attorney Plaintiff retained to represent her during her divorce. ECF No. 10-1 at 1. For example, Plaintiff alleges that Mr. Cordell (1) did not follow Plaintiff's directions, (2) did not represent her best interests, (3) withheld information and filings from her, and (4) entered into agreements without her consent, etc. Id. But, again, Plaintiff cannot pursue § 1983 claims against Mr. Cordell because he is not a state actor. See Catz, 142 F.3d at 289; see also Deas v. Potts, 547 F.2d 800, 800 (4th Cir. 1976) (recognizing that a privately retained attorney "is not acting under color of state law, and therefore is not amenable to suit under § 1983"). Therefore, to the extent Plaintiff alleges § 1983 claims against Mr. Cordell, those claims must be dismissed with prejudice. See id.

In addition, none of these allegations raise a federal question that would give this Court federal-question jurisdiction pursuant to § 1331. Nor does this Court have diversity jurisdiction pursuant to § 1332, because Plaintiff Shelton and Mr. Cordell are both citizens of West Virginia. Accordingly, Plaintiff's claims against Mr. Cordell must be dismissed, without prejudice, for lack of subject-matter jurisdiction. See OpenBand at Broadlands, LLC, 713 F.3d at 185 (holding that a dismissal for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

### ii.    Qualified Immunity

Plaintiff also asserts a variety of claims against numerous troopers of the West Virginia State Police and deputies of the Berkeley County Sheriff's Department. Specifically, Plaintiff names Troopers Cook, Burkhart, Sims, Morton, Myers, Dillon,

26

Boober, Bowman, Anderson, White, and English; Deputies Laing, McGowan, Perkins, and Young; Chief Investigator Harmison; and former Sheriff LeMaster. ECF No. 10 at 2, 3. However, these allegations must be dismissed for two reasons.

First, Plaintiff's allegations must be dismissed for failure to state a claim upon which relief can be granted. See 28 U.S.C. 1915(e)(2)(B)(ii). Here, Plaintiff fails to state a claim pursuant to § 1983 because she does not state what legal right she has been deprived of, if any, because of the actions (or in actions) of the above-named law enforcement officers. See ECF No. 10 at 2–3; see also Key, 2008 WL 4379162, at *2 (citing Harvey, 949 F.2d at 1130) (stating that plaintiffs "must show that the conduct complained of was committed by a person acting under the color of state law and that such conduct deprived [her] of a right secured by the Constitution or laws of the United States" (emphasis added)). Nor can the undersigned discern what legal right Plaintiff could have been deprived of. See ECF No. 10 at 2–3. Because Plaintiff fails to state a claim upon which relief can be granted, her claims must be dismissed without prejudice. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Second, even if Plaintiff did properly state a § 1983 claim, the above-named law enforcement officers would likely be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016) (internal quotation marks omitted). "A right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right' and 'existing precedent . . . placed the statutory or

constitutional question beyond debate.'" <u>Ross v. Klesius</u>, No. 16-2040, 2017 WL 4994785, at *1 (4th Cir. Oct. 25, 2017) (quoting <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012)); <u>see also</u> <u>Yates v. Terry</u>, 817 F.3d 877, 887 (4th Cir. 2016) (describing "clearly established" constitutional right). "In practical effect, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments." <u>Graham</u>, 831 F.3d at 182 (internal quotation marks omitted). "'Because qualified immunity is an immunity from suit rather than a mere defense to liability,' and thus is 'effectively lost if a case is erroneously permitted to go to trial," the Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" <u>Ross</u>, 2017 WL 4994785, at *1 (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231–32 (2009)).

Third, to the extent Plaintiff does not state a claim pursuant to § 1983 but, rather, states a tort claim for slander or assault, it is not clear whether the Court would even have jurisdiction to hear them. Indeed, the above-named law enforcement officers are likely citizens of West Virginia, and Plaintiff's generic tort claims do not raise a federal question. <u>See</u> 28 U.S.C. §§ 1331, 1332. But even if the Court did have diversity jurisdiction to hear Plaintiff's non-§ 1983 claims, those claims would nevertheless fail because they are time barred by the applicable statute of limitations.[16]

For example, under West Virginia law, a claim of assault is subject to a two-year statute of limitations. Courtney, 190 W. Va. at 130, 437 S.E.2d at 440. And under West Virginia law, a claim of slander is subject to a one-year statute of limitations. White, 2013 WL 3184640, at *2 (citing W. Va. Code §§ 55-2-12, 55-7-8a). Here, all of Plaintiff's

---

[16] Because the Court's jurisdiction is based on diversity, the applicable statute of limitations is determined by West Virginia state law. <u>Rowland</u>, 852 F.2d at 110 ("Federal courts sitting in diversity generally apply state statutes of limitations." (citing <u>Ragan</u>, 337 U.S. 530)).

allegations seemingly stem from her 2014 divorce from Mr. Crookshank. See generally ECF Nos. 10, 10-1. And the Complaint makes clear that Plaintiff's only claim of assault took place in 2012. Accordingly, Plaintiff's claim of assault is plainly time barred by the applicable statute of limitations.[17] See Courtney, 190 W. Va. at 130, 437 S.E.2d at 440. Likewise, there is no factual basis in the Complaint to suggest that Plaintiff was slandered any time after August 31, 2016 (one year before Plaintiff filed her initial Complaint). Accordingly, Plaintiff's claim of slander is time barred by the applicable statute of limitations. See White, 2013 WL 3184640, at *2 (citing W. Va. Code §§ 55-2-12, 55-7-8a).

"Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." Smith, 2015 WL 6773854, at *2 (citing Roman, 904 F.2d at 195 n.3). Accordingly, Plaintiff's claims against the above-named law enforcement officers are dismissed without prejudice.

### iii. Prosecutorial Immunity

Plaintiff asserts a variety of causes of action against Pamela Games Neely, the former Berkeley County Prosecuting Attorney. See ECF No. 10 at 2. All of those allegations seemingly stem from Ms. Neely's decision not to prosecute Robert Blane Crookshank. As stated above, the Supreme Court has long made clear that "prosecutors enjoy absolute immunity for conduct 'intimately associated with the

---

[17] Plaintiff's claim that she was not aware of the assault of any other claim until 2016 is plainly without merit. A person knows of—or should have known of—an assault at the time the assault took place. Indeed, "[a]n actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 52, 602 S.E.2d 483, 495 (2004) (quoting Restatement (Second) of Torts § 21 (1965)).

judicial phase of the criminal process.'" <u>Lyles v. Sparks</u>, 79 F.3d 372, 376 (4th Cir. 1996) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)). This includes absolute immunity for "prosecutors' decisions 'whether and when to prosecute.'" <u>Lyles</u>, 79 F.3d at 377 (quoting <u>Imbler</u>, 424 U.S. at 431 n.33). Because Ms. Neely's decision not to prosecute Mr. Crookshank is entitled to absolute immunity, Plaintiff's claims are indisputably meritless. "Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." <u>Smith</u>, 2015 WL 6773854, at *2 (citing <u>Roman</u>, 904 F.2d at 195 n.3). Accordingly, Plaintiff's claims Ms. Neely are dismissed with prejudice.

### iv.    Judicial Immunity

Plaintiff asserts numerous allegations against Family Court Judge Sally G. Jackson, Circuit Court Judge Michael D. Lorensen, and the 2015-2016 Term Justices of the Supreme Court of Appeals of West Virginia, specifically then Chief Justice Menis E. Ketchum, II, then Associate Justice Brent D. Benjamin, Associate Justice Robin Jean Davis, then Associate Justice Allen H. Loughry II, and Associate Justice Margaret L. Workman. ECF No. 10-1 at 2, 5. Thankfully, the Court need not recite them here because the undersigned readily concludes that Plaintiff's allegations are indisputably meritless.

"[J]udges are <u>absolutely</u> immune from suit for a deprivation of civil rights" for actions taken within their jurisdiction." <u>King v. Myers</u>, 973 F.2d 354, 356 (4th Cir. 1992) (emphasis added). "However, to be entitled to immunity, the act taken must be a 'judicial act'—i.e., a 'function [that is] normally performed by a judge, and [for which] the

parties dealt with the judge in his or her judicial capacity.'" <u>Foster v. Fisher</u>, 694 Fed.

App'x 887, 888 (4th Cir. 2017) (alterations in original) (quoting <u>King</u>, 973 F.2d at 356).

"In addition, '[a] judge will not be deprived of immunity because the action he took was

in error, was done maliciously, or was in excess of his authority; rather, he will be

subject to liability <u>only</u> when he has acted in the clear absence of all jurisdiction.'" <u>Id.</u>

(emphasis added) (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 356–57 (1978)).

Here, Judge Jackson plainly had jurisdiction over Plaintiff's divorce proceedings.

<u>See</u> W. Va. Code § 51-2A-2. In addition, Judge Jackson's actions during those

proceedings were, indeed, judicial acts. Because Judge Jackson had jurisdiction over

the divorce and her acts were judicial acts, Judge Jackson is entitled to absolute

immunity. <u>See</u> <u>King</u>, 973 F.2d at 356; <u>Foster</u>, 694 Fed. App'x at 888. That includes

absolute immunity for Judge Jackson's actions even if they were done in error,

maliciously, or in excess of her authority. <u>Foster</u>, 694 Fed. App'x at 888 (quoting <u>Stump</u>,

435 U.S. at 356–57). Accordingly, Plaintiff's claims against Judge Jackson are

indisputably meritless and must be dismissed with prejudice. <u>See</u> 28 U.S.C. §

1915(e)(2)(B)(i).

Likewise, Judge Lorensen and the 2015-2016 Term Justices of the Supreme

Court of Appeals are entitled to absolute immunity. Judge Lorensen had jurisdiction to

review Judge Jackson's decision in family court. <u>See</u> W. Va. Code §§ 51-2-2, 51-2A-14.

And the Supreme Court of Appeals had jurisdiction to review Judge Lorensen's decision

from circuit court. <u>See</u> W. Va. Code §§ 51-1-3, 51-2A-15. Further, Judge Lorensen's

only action was refusing to hear Plaintiff's appeal because it was untimely. ECF No. 10-

1 at 5; <u>see also</u> <u>Shelton</u>, 2015 WL 7628839. This was clearly a judicial act. Likewise, the

only action by the 2015-2016 Term Justices was affirming Judge Lorensen's order because Plaintiff's appeal was, indeed, untimely. Id. Because Judge Lorensen and the 2015-2016 Term Justices had jurisdiction to hear Plaintiff's case and their acts were judicial acts, they are entitled to absolute immunity. See King, 973 F.2d at 356; Foster, 694 Fed. App'x at 888. Accordingly, Plaintiff's claims against Judge Lorensen and the 2015-2016 Term Justices are indisputably meritless and must be dismissed with prejudice. See 28 U.S.C. § 1915(e)(2)(B)(i).

### H.  Failure to State a Claim Upon Which Relief Can Be Granted

Although Plaintiff names Heather Deeds, the Director of the Berkeley County Victim Witness Assistance Program, as a Defendant, Plaintiff does not assert any factual allegations against her. See ECF No. 10 at 2. Rather, all of Plaintiff's relevant allegations only refer to the alleged actions or inactions of Ms. Neely, who (as discussed above) is entitled to prosecutorial immunity. Id. Because Plaintiff fails to articulate any facts against Ms. Deeds—let alone facts that would satisfy the requisite plausibility standard—Plaintiff's claims against Ms. Deeds must be dismissed without prejudice. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### I.  Wrongful Death of Immogene Williams Daniels

Plaintiff also claims that all of the named defendants contributed to the wrongful death of her mother, Immogene Williams Daniels. ECF No. 10-1 at 8–9. Thankfully, the undersigned need not conclude whether the claim is properly brought or whether the Court has jurisdiction over the claim (or the defendants) because even if those questions were answered in the affirmative, Plaintiff's wrongful death claim is barred by

the relevant statute of limitations.[18] A wrongful death action, under West Virginia law, is subject to a two-year statute of limitation. See W. Va. Code § 55-7-6. According to the Complaint, Plaintiff's mother passed away on May 26, 2014. ECF No. 10 at 9. Therefore, Plaintiff was required to file her wrongful death action by May 26, 2016. See W. Va. Code § 55-7-6. Because Plaintiff did not file this cause of action until August 31, 2016 (the date Plaintiff filed her original Complaint), her wrongful death claim is time barred by the applicable statute of limitations. See W. Va. Code § 55-7-6. Accordingly, Plaintiff's claim must be dismissed with prejudice.

### J.  Any Remaining Claims

"Under the circumstances, the court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve." Smith, 2015 WL 6773854, at *2 (citing Roman, 904 F.2d at 195 n.3). Therefore, to the extent any of Plaintiff's claims remain, the undersigned readily concludes—without hesitation—that they are "indisputably meritless" and must be dismissed without prejudice.

### VI.   RECOMMENDATION

For the foregoing reasons, I find that (1) this Court lacks subject-matter or personal jurisdiction, (2) various Defendants are improperly named, (3) various Defendants are entitled to judicial, prosecutorial, or qualified immunity, (4) Plaintiff fails to state a claim upon which relief can be granted, and (5) Plaintiff's remaining claims are either time barred by the applicable statute of limitations or are indisputably meritless and, therefore, dismissal is warranted pursuant to 28 U.S.C. § 1915(e). Accordingly, I

---

[18] Because the Court's jurisdiction is based on diversity, the applicable statute of limitations is determined by West Virginia state law. Rowland, 852 F.2d at 110 ("Federal courts sitting in diversity generally apply state statutes of limitations." (citing Ragan, 337 U.S. 530)).

**RECOMMEND** that Plaintiff's Complaint [ECF No. 10] be **DISMISSED WITH** and

**WITHOUT PREJUDICE** (as indicated throughout R&R) and that Plaintiff's Motion [ECF

No. 2] for Leave to Proceed In Forma Pauperis be **DENIED** as moot.

Within fourteen (14) days after being served with a copy of this Report and

Recommendation, Plaintiff Anita J. Shelton may file written objections identifying the

portions of the Report and Recommendation to which objections are made and the

basis for such objections with the Clerk of the Court. A copy of such objections should

also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

Failure to timely file objections to the Report and Recommendation set forth above will

result in waiver of the right to appeal from a judgment of this Court based upon such

Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d

841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984),

cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and

Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to her

last known address as reflected on the docket sheet. Further, because this Report and

Recommendation completes the referral from the District Court, the Clerk is directed to

terminate the Magistrate Judge association with this case.

Respectfully submitted this 17th day of November, 2017.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE